# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STEPHEN THIEL, in pro per,
22222 Oxford
DEARBORN, MI 48124

V.

Case: 2:20-cv-10411
Judge: Cox, Sean F.
MJ: Whalen, R. Steven
Filed: 02-18-2020 At 01:21 PM
CMP THIEL V. GROSSE POINTE FARMS, CITY OF ET AL (NA)

CITY OF GROSSE POINTE FARMS et al,

CITY OF GROSSE POINTE et al,

CITY OF GROSSE POINTE WOODS et al,

CITY OF GROSSE POINTE PARK et al,

CITY OF GROSSE POINTE SHORES et al,

CHARLES BERSCHBACK,

COUNTY of WAYNE MICHIGAN et al,

COUNTY of OAKLAND MICHIGAN et al,

KIM WORTHY, MICHAEL KAZYAK, GARY BRESNEHAN, HILLARY ROUSSEAU,

BENNY NAPOLEAN, DANIEL JENSEN Sr., DANIEL JENSEN Jr.,

LISA JENSEN F/K/A THIEL, WILLIAM BURGESS, LOUIS THEROS,

DICKINSON WRIGHT, JOHN ALCORN, JOSEPH ADAMS,

JOSEPH SREBERNAK, FILDEW HINKS PLLC,

CHARLES KENNEDY, ANTHONY CHALUT,

DONALD WHEATON, CITY OF HAMTRAMCK et. al.,

LUIGI GJOKAJ, STEPHEN POLONI,

HON. THEODORE METRY in his Official capacity Only,

HON. MATTHEW RUMORA in his Official capacity Only,

HON. CARL JARBOE in his Official capacity Only,

HON. RUSSELL ETHRIDGE in both his personal and official Capacities.

## COMPLAINT AND JURY DEMAND

This cause of action arises from Defendants' intentional, willful and negligent acts related to filing false police reports, extortion, stalking, conspiracy against rights, malicious prosecution(s) and abuse of process, and the deliberately indifferent response to the PLAINTIFF'S diligent reports of above acts to Defendant(s). Defendants' failure to promptly and appropriately investigate and respond to PLAINTIFF'S complaint(s) effectively denied PLAINTIFF'S rights of Equal Protection, granted under the Fourteenth Amendment of the U.S. Constitution. This action also alleges denial of PLAINTIFF'S right to be secure from unlawful search and seizure, a protection of the laws under the Fourth Amendment to the U.S. Constitution. This action also alleges denial of PLAINTIFF'S right to remain free from the infliction of cruel and unusual punishment, a protection of the laws under the Eighth Amendment to the U.S. Constitution.

PLAINTIFF, STEPHEN THIEL, in pro per, hereby files the following complaint against Defendants as captioned above.

## I. JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any STATE Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. PLAINTIFF brings this action to redress injuries related to conspiracy against rights pursuant to 18 USC § 241, as more fully set forth herein.

4. PLAINTIFF brings this action to redress injuries related to police misconduct pursuant to 18 USC § 242, as more fully set forth herein.

5. PLAINTIFF brings this action to redress the deprivation of PLAINTIFF'S constitutional rights under the

Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

6. PLAINTIFF brings this action to redress the deprivation of PLAINTIFF'S constitutional rights under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

8. STEPHEN THIEL, ("PLAINTIFF") is a Male and at all material times PLAINTIFF was a resident of both GROSSE POINTE CITY and Dearborn, WAYNE COUNTY, STATE OF MICHIGAN.

9. At the time of events complained of herein, Defendant COUNTY of OAKLAND et al. ("OAKLAND") is a COUNTY located within the STATE OF MICHIGAN.

10. At the time of events complained of herein, Defendant COUNTY of WAYNE et al. ("WAYNE") is a COUNTY located within the STATE OF MICHIGAN.

11. That at all times referred to, Defendant CITY OF GROSSE POINTE WOODS et al. ("GPW"), is a municipal corporation, duly organized and existing by virtue of the laws of the STATE OF MICHIGAN and its principal place of business in WAYNE COUNTY COUNTY, MICHIGAN.

12. That at all times referred to, Defendant CITY OF GROSSE POINTE et al. ("GPC"), is a municipal corporation, duly organized and existing by virtue of the laws of the STATE OF MICHIGAN and its principal place of business in WAYNE COUNTY COUNTY, MICHIGAN.

13. That at all times referred to, Defendant CITY OF GROSSE POINTE FARMS et al. ("GPF"), is a municipal corporation, duly organized and existing by virtue of the laws of the STATE OF MICHIGAN and its principal place of business in WAYNE COUNTY COUNTY, MICHIGAN.

14. That at all times referred to, Defendant CITY OF GROSSE POINTE SHORES et al. ("GPS"), is a municipal corporation, duly organized and existing by virtue of the laws of the STATE OF MICHIGAN and its principal place of business in WAYNE COUNTY COUNTY, MICHIGAN.

15. That at all times referred to, Defendant HAMTRAMCK et. al. ("HAMTRAMCK"), is a municipal corporation, duly organized and existing by virtue of the laws of the STATE OF MICHIGAN and its

principal place of business in WAYNE COUNTY COUNTY, MICHIGAN.

16. That at all times referred to, Defendant CITY OF GROSSE POINTE PARK et al. ("GPP"), is a municipal corporation, duly organized and existing by virtue of the laws of the STATE OF MICHIGAN and its principal place of business in WAYNE COUNTY COUNTY, MICHIGAN.

17. At the time of events complained of herein, KIM WORTHY ("WORTHY"), in her official and individual capacities, is the elected CHIEF Prosecutor within WAYNE COUNTY, STATE OF MICHIGAN.

18. At the time of events complained of herein, MICHAEL KAZYAK ("KAZYAK"), in his official and individual capacities, is a Prosecutor within WAYNE COUNTY, STATE OF MICHIGAN.

19. At the time time of events complained herein, GARY BRESNEHAN ("BRESNEHAN"), in his official capacity and individual capacities, is the COUNTY Prosecutor whom operates within the GROSSE POINTE, GROSSE POINTE WOODS and GROSSE POINTE FARMS Municipal Courts.

20. At the time of events complained of herein, HILLARY ROUSSEAU ("ROUSSEAU"), in her official and individual capacities, is a prosecutor whom approves and signs warrant requests for WAYNE COUNTY, STATE OF MICHIGAN.

21. At the time of events complained of herein, BENNY NAPOLEAN ("NAPOLEAN"), in his official and individual capacities, is the Elected WAYNE COUNTY Sheriff of WAYNE COUNTY, STATE OF MICHIGAN and also is a Member of the MICHIGAN Association of Chiefs of Police.

22. At the time of events complained of herein, STEPHEN POLONI ("POLONI"), in his official and individual capacities, is the appointed Public Safety CHIEF in GROSSE POINTE FARMS, STATE OF MICHIGAN and is a member of the MICHIGAN Association of Chiefs of Police.

23. At the time of events complained of herein, DANIEL JENSEN, SR. ("CHIEF JENSEN"), in his official and individual capacities, is the appointed Public Safety CHIEF in GROSSE POINTE FARMS, STATE OF MICHIGAN and is a member of the MICHIGAN Association of Chiefs of Police.

24. Prior to the time of events complained of herein, DANIEL JENSEN, SR. ("CHIEF JENSEN"), in his official and individual capacities, was the Treasurer for the MICHIGAN Association of Chiefs of Police.

25. At the time of events complained of herein, DANIEL JENSEN, SR. ("CHIEF JENSEN"), is the Father of DANIEL JENSEN, JR. and the Father in Law of LISA holbrook JENSEN, F/K/A LISA THIEL (PLAINTIFF'S Former Wife).

26. At the time of events complained of herein, DANIEL JENSEN, JR. ("Dan JENSEN Jr.") in his

individual capacity, is a resident of GROSSE POINTE WOODS and also the son of GROSSE POINTE FARMS Public Safety CHIEF DANIEL JENSEN, SR., as well as the 2nd Husband of LISA THIEL, GROSSE POINTE FARMS, STATE OF MICHIGAN.

27. At the time time of events complained of herein, LISA JENSEN F/K/A LISA THIEL ("LISA THIEL") is a resident of GROSSE POINTE WOODS, MICHIGAN.

28. At the time of events complained of herein, LOUIS THEROS ("THEROS") in his official and individual capacities, is the Elected Mayor of GROSSE POINTE FARMS, located within WAYNE COUNTY, STATE OF MICHIGAN.

29. At the time of events complained of herein, WILLIAM BURGESS ("BURGESS") in his official and individual capacities, is the Appointed Attorney and Prosecutor for the CITY OF GROSSE POINTE FARMS, located within WAYNE COUNTY, STATE OF MICHIGAN.

30. At the time of events complained of herein, WILLIAM BURGESS ("BURGESS"), in his official and individual capacities, is the Chairman of the Board for DICKINSON WRIGHT, a law firm located within Detroit, WAYNE COUNTY, STATE OF MICHIGAN.

31. At the time of events complained of herein, DICKINSON WRIGHT ("DICKINGSON WRIGHT") in its official capacity, is a Law Firm which is the appointed Legal Counsel for the CITY OF GROSSE POINTE FARMS, located within WAYNE COUNTY, STATE OF MICHIGAN.

32. At the time of events complained of herein, JOHN ALCORN ("ALCORN"), in his official and individual capacities, is an employee of the GROSSE POINTE CITY Public Safety Department located within the CITY OF GROSSE POINTE, WAYNE COUNTY, STATE OF MICHIGAN.

33. At the time of events complained of herein, JOSEPH ADAMS ("ADAMS"), in his official and individual capacities, is an employee of the GROSSE POINTE CITY Public Safety Department located within the CITY OF GROSSE POINTE, WAYNE COUNTY, STATE OF MICHIGAN.

34. At the time of events complained of herein, JOSEPH SREBERNAK ("SREBERNAK"), in his official and individual capacities, is an employee of the GROSSE POINTE CITY Public Safety Department located within the CITY OF GROSSE POINTE, WAYNE COUNTY, STATE OF MICHIGAN.

35. At the time of events complained of herein, CHARLES KENNEDY ("KENNEDY"), in his official and individual capacities, is the appointed Attorney and Prosecutor for GROSSE POINTE CITY, WAYNE COUNTY, STATE OF MICHIGAN.

36. At the time of events complained of herein, FILDEW HINKS PLLC ("FILDEW HINKS") in its official

capacity, is a Law Firm which is the appointed Legal Counsel for the CITY OF GROSSE POINTE FARMS, located within WAYNE COUNTY, STATE OF MICHIGAN.

37. At the time of events complained herein, HON. RUSSELL ETHRIDGE ("HON. RUSSELL ETHRIDGE") in his official and individual capacities, is the Elected Municipal Judge for the CITY OF GROSSE POINTE, located within WAYNE COUNTY, STATE OF MICHIGAN.

38. At the time of events complained of herein, ANTHONY CHALUT ("CHALUT"), in his official and individual capacities, is an employee of the GROSSE POINTE WOODS Public Safety Department located within the CITY OF GROSSE POINTE WOODS, WAYNE COUNTY, STATE OF MICHIGAN.

39. At the time of events complained of herein, ANTHONY CHALUT ("CHALUT"), in his individual capacities, is a resident of GROSSE POINTE FARMS, whom ran for an open CITY Council Seat for the CITY OF GROSSE POINTE FARMS, WAYNE COUNTY, STATE OF MICHIGAN.

40. At the time of events complained herein, DONALD WHEATON ("WHEATON"), in his individual and official capacity as a JENSEN Attorney, is an attorney located within the CITY OF ST. CLAIR SHORES, Macomb COUNTY, MICHIGAN.

41. At the time of events complained of herein, Defendant LUIGI GJOKAJ("GJOKAJ"), in his individual and official capacities, is a detective for the CITY OF HAMTRAMCK within WAYNE COUNTY, STATE OF MICHIGAN

42. At the time of events complained of herein, CHARLES BERSCHBACK ("BERSCHBACK"), in his official and individual capacities, is the appointed Attorney and Prosecutor for GROSSE POINTE CITY, WAYNE COUNTY, STATE OF MICHIGAN.

43. At the time of events complained herein, HON. CARL JARBOE ("HON. CARL JARBOE") in his official capacities, is the Elected Municipal Judge for the CITY OF GROSSE POINTE PARK, located within WAYNE COUNTY, STATE OF MICHIGAN.

44. At the time of events complained herein, HON. THEODORE METRY ("HON. THEODORE METRY") in his official capacities, is the Elected Municipal Judge for the CITY OF GROSSE POINTE WOODS, located within WAYNE COUNTY, STATE OF MICHIGAN.

45. At the time of events complained herein, HON. MATTHEW RUMORA ("HON. MATTHEW RUMORA") in his official capacities, is the Elected Municipal Judge for the CITY OF GROSSE POINTE SHORES and, in his official capacities, is the Elected Municipal Judge for the CITY OF GROSSE POINTE FARMS, both located within WAYNE COUNTY, STATE OF MICHIGAN.

## III. APPLICABLE LAW

46. The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV, § 1.

47. The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII, § 1.

48. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no STATE shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

49. At MCL 750.411h, Stalking, MICHIGAN law in pertinent part provides that

    (i) Following or appearing within the sight of that individual.

    (ii) Approaching or confronting that individual in a public place or on private property.

    (iii) Appearing at that individual's workplace or residence.

    (iv) Entering onto or remaining on property owned, leased, or occupied by that individual.

    (v) Contacting that individual by telephone.

    (vi) Sending mail or electronic communications to that individual.

    (vii) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

    (2) An individual who engages in stalking is guilty of a crime as follows:

    (a) Except as provided in subdivision (b), a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.

50. Monell v. Department of Social Services, 436 U.S. 658 (1978), is an opinion given by the United States Supreme Court in which the Court overruled Monroe v. Pape in holding that a local government is a "person" subject to suit under Section 1983 of Title 42 of the United States Code: Civil action for deprivation of rights.

51. At MCL 750.218 False Pretenses with Intent to Defraud. Provides in pertinent part that

> (c) Obtain from a person any money or personal property or the use of any instrument, facility, article, or other valuable thing or service.

52. At MCL 600.2907 Malicious prosecution or action; civil liability, penalty. Sec. 2907, provides in pertinent part that

> Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him; and shall be liable to the person in whose name such arrest or proceeding was had in the sum of $200.00 damages, and shall be deemed guilty of a misdemeanor, punishable on conviction by imprisonment in the COUNTY jail for a term not exceeding 6 months.

53. At MCL 750.213 Malicious threats to extort money. Sec. 213., provides that

> Malicious threats to extort money—Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the STATE prison not more than 20 years or by a fine of not more than 10,000 dollars.

54. At MCL 750.411a False report of crime or report of medical or other emergency; violation; penalty; payment of costs by juvenile; jurisdiction; definitions. Sec. 411a., provides in pertinent part that

> (1) Except as otherwise provided in subsections (2) and (3), a person who intentionally makes a false report of the commission of a crime. or intentionally causes a false report of the commission of a crime to be made, to a peace officer, police agency of this STATE or of a local unit of government, 9-1-1 operator, or any other governmental employee or contractor or employee of a contractor who is authorized to receive reports of a crime, knowing the report is false, is guilty of a crime as follows:
>
> (a) Except as provided in subdivisions (b) through (c). if the report is a false report of a

misdemeanor, the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

55. MCL 28.214 C.J.I.S. POLICY COUNCIL ACT (EXCERPT), Act 163 of 1974, Council; duties; fingerprints; disclosure of information; violation; penalty, provides in its pertinent parts that

(1) The council shall do all of the following:

(a) Establish policy and promulgate rules governing access, use, and disclosure of information in criminal justice information systems, including the law enforcement information network, the automated fingerprint information system, and other information systems related to criminal justice or law enforcement. The policy and rules must do all of the following:

(3) A person shall not access, use, or disclose nonpublic information governed under this act for personal use or gain.

(4) The attorney general or his or her designee, a prosecuting attorney, or the court, in a criminal case, may disclose to the defendant or the DEFENDANT'S attorney of record information pertaining to that defendant that was obtained from the law enforcement information system.

(5) A person shall not disclose information governed under this act in a manner that is not authorized by law or rule.

(6) A person who intentionally violates subsection (3) or (5) is guilty of a crime as follows:

(a) For a first offense, the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

(b) For a second or subsequent offense, the person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both.

56. At MCL 600.8396 Municipal Ordinance Violations Bureau Sec. 8396 States that

A COUNTY, CITY, village, or township may by ordinance establish a municipal ordinance violations bureau to accept admissions of responsibility for municipal civil infractions and to collect and retain civil fines and costs pursuant to a schedule as prescribed by ordinance. The expense of operating a municipal ordinance violations bureau shall be borne by the COUNTY, CITY, village, or township, and the personnel of the bureau shall be COUNTY, CITY, village, or township employees.

57. US CODE 18 1512, Tampering with a witness, victim or an informant

(b)  Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--

(3)  hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release,parole, or release pending judicial proceedings;

(c)  Whoever corruptly--

(1)  alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding;

or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

(d)Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from--

(1)  attending or testifying in an official proceeding;

(2)  reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense

58.  U.S. Constitution, Article III., Which States in pertinent part

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;— to all Cases affecting Ambassadors, other public Ministers and Consuls;— to all Cases of admiralty and maritime Jurisdiction;— to Controversies to which the United States shall be a Party;— to Controversies between two or more States:— [between a STATE and Citizens of another STATE;-]between citizens of different States; ·· between Citizens of the same STATE claiming Lands under Grants of different States [and between a STATE, or the Citizens thereof;— and foreign States, Citizens or Subjects.]

## III. Factual Allegations

59. In June of 2017, LISA THIEL filed for a complaint of divorce against PLAINTIFF.

60. In May of 2018, a Judgment of Divorce was granted to LISA THIEL. Of particular importance to this complaint, the order of divorce granted joint legal and joint physical custody to the THIEL's minor child to both LISA THIEL and PLAINTIFF. This consent judgment provided for an approximately six month "ramp up" parenting time, with a multitude of benchmarks and provisions to account for failures to comply.

61. Between May 2018 and July 2018, LISA THIEL failed to follow the custody order, repeatedly withholding parenting time improperly, even admitting in 3rd Circuit Court filings that LISA THIEL believed PLAINTIFF (in this complaint) would never satisfy his obligations under the judgment

62. Upon PLAINTIFF having satisfied the first parts of the Consent Judgment, LISA THIEL and her new boyfriend, Dan JENSEN Jr, and his father, CHIEF JENSEN (Of GPF), knowingly, willfully and intentionally developed an illegal scheme to have PLAINTIFF charged with a crime to provide grounds for a 3rd Circuit Court of MICHIGAN Post Judgment Motion for a Change in Custody and Parenting Time.

63. CHIEF JENSEN, previously the treasurer for the Michigan Association of Chiefs of Police, became acquainted with NAPOLEAN during his time as Treasurer and has continued to maintain professional and personal conduct NAPOLEAN to date.

64. While PLAINTIFF was supervising his daughter swimming at the local pool, Defendants arranged to have the pool supervisor notified that PLAINTIFF'S minor child was in fact not supervised.

65. Despite wildly conflicting witness statements and absolutely no evidence that PLAINTIFF was not supervising his daughter, and no actual danger nor harm to child having been identified, nor any applicable statutes regarding specific requirements for supervision while a child enjoys a swimming pool, GROSSE POINTE CITY Deputy CHIEF JOHN ALCORN filed charges of Child Abuse against PLAINTIFF in this complaint. GROSSE POINTE CITY Attorney/Prosecutor CHARLES KENNEDY Approved the Charges.

66. CHARLES KENNEDY, JOHN ALCORN and CHIEF JENSEN maintain relationships that include personal discussions and communications to each others private mobile telephone numbers, as well as in

person communications for various work and personal related reasons.

67. CHARLES KENNEDY offered a plea of "Disorderly Conduct", which PLAINTIFF accepted, reluctantly. This was the first criminal act for all defendants listed in this complaint. PLAINTIFF only accepted the plea in December 2018 because he did not yet realize he was the victim of a crime. Notably, this factual allegation is only for background purposes in this complaint.

68. No parent has ever been charged with child abuse at GROSSE POINTE CITY Pool, despite numerous complaints to the pool supervisors over the years of children being improperly supervised.

69. ALCORN admitted that although nobody was ever charged before, the police "had to do something" because CHIEF JENSEN's daughter in law was complaining.

70. A highly publicized fire took the lives of two children, ages 9 and 11 who were admittedly left home alone and were undeniably not capable of making mature decisions under the circumstances of a house fire, as a voicemail was left by the children explaining the circumstances while they still had the opportunity to escape. Despite these circumstances, even these parents were not charged with a crime. The CITY OF GROSSE POINTE knowingly, willfully and intentionally maintained policies or practices which do not provide equal protections by failing to even bring charges against the person responsible for supervising these children at the time of the fire.

71. After filing a complaint regarding child abuse, LISA THIEL filed for full custody of her Minor Child in October 2018. After 6 months of PLAINTIFF not seeing his child, against the consent Judgment, on or about March 18, 2019, a Referee in 3rd CC family court ordered the reinstatement of parenting time.

72. LISA THIEL immediately began violating the custody order immediately upon it being re-instated by a 3rd Circuit Court of Michigan Referee. Immediately, LISA THIEL again began violating the custody agreement in countless ways. Pertinent to this complaint, she would not share any information related to health care providers or appointments.

73. After a court ordered friend of the Court Recommendation of Joint Legal Custody and Equal parenting time was entered, the willful and intentional illegal scheme by LISA THIEL, The JENSENS, and other defendants, accelerated at a rapid and observable pace.

74. PLAINTIFF called the company whom provides insurance for PLAINTIFF'S daughter, RPM FREIGHT SYSTEMS in ROYAL OAK, MI. (PENDING INFORMATION MAY RESULT IN AMENDED COMPLAINT TO INCLUDE RPM FREIGHT SYSTEMS AS CO-DEFENDANT).

75. After communicating with a manager, ANTHONY CONTRELL, as well as the CEO, BARRY SPIELMAN, PLAINTIFF received the information requested.

76. LISA THIEL and DANIEL JENSEN JR, and possibly RPM EMPLOYEE representatives SPIELMAN AND CONTRELL, conspired to file false police reports in ROYAL OAK, GROSSE POINTE, GROSSE POINTE WOODS, 3rd CIRCUIT COURT (ppo) and perjured themselves in GROSSE POINTE CITY MUNICIPAL COURT and 3rd Circuit Court, stating that PLAINTIFF represented himself as a lawyer and violated their rights by threatening RPM FREIGHT SYSTEMS. Royal Oak and Oakland County declined to pursue the matter, reasonably.

77. On May 8th, 2019 PLAINTIFF expressed concerns to LISA THIEL regarding Minor Child, which were rejected at face value. PLAINTIFF messaged LISA THIEL threatening legal action, even confirming it was a threat of legal action, based upon LISA THIEL's assertions in same exchange that PLAINTIFF was "Threatening" her.

78. Shortly after the May 8th text message exchange between LISA THIEL and PLAINTIFF, LISA THIEL filed a complaint with GPW public safety alleging threats of violation, solely based upon the text messages. The text message conversation was knowingly, willfully and intentionally modified to have material omissions which rise to the level of filing a false police report, as LISA THIEL knew there were no threats of violence or of any kind for that matter, other than a threat of legal action.

79. GPW Officer CHALUT submitted his "investigation" to BERSCHBACK for charges. PLAINTIFF was charged with "Using a Telcom Device for Malicious Purposes".

80. CHALUT never called to speak with PLAINTIFF, but instead filed charges solely based upon fraudulent and unconvincing evidence proffered by DAN JENSEN JR and LISA THIEL.

81. CHALUT lives in GROSSE POINTE FARMS and recently ran for an open City Council seat. CHIEF JENSEN advocated for and endorsed CHALUT'S election and maintains a personal and professional relationship with officer CHALUT. CHALUT lost the election.

82. CHALUT began disseminating PLAINTIFF'S LEIN information immediately upon LISA THIEL and DAN JENSEN JR filing a police report in mid may, 2019.

83. LISA THIEL testified under oath that CHALUT was one of the sources of her having known PLAINTIFF'S LEIN information.

84. Immediately upon learning that PLAINTIFF was being charged with a crime, PLAINTIFF filed a complaint with GPW Public Safety alleging LISA THIEL filed a false police report, evidence of the actual conversation was submitted with the police report.

85. GPW Prosecutor BERSCHBACK declined to approve charges, but instead pivoted on how PLAINTIFF'S original text message was still a crime.

86. CHALUT refused to even answer PLAINTIFF'S phone calls or return them. Despite having been made aware of the new information PLAINTIFF provided, which proved no crime had been committed, CHALUT did not ask for the complaint to be dismissed.

87. After various pre-trial hearings, twice PLAINTIFF provided text messages in complaints to GPW public safety which mirrored BERSCHBACK's evolving theories or how PLAINTIFF committed a crime. Each time GPW Public Safety felt there was probable cause and submitted the case to BERSCHBACK requesting charges, and each time BERSCHBACK pivoted and developed an ever refined theory of how LISA THIEL did not break the law, but PLAINTIFF did.

88. After BERSCHBACK'S legal theories were finally exhausted, charges were dismissed, nole prosequi, with prejudice on 10-9-2019.

89. Through written or unwritten policies, GPW knowingly, willfully and intentionally allowed it's representative, BERSCHBACK, to unequally protect those whom filed complaints with the police department.

90. BERSCHBACK is a long time resident of the GROSSE POINTES and maintains a personal and professional relationship with CHIEF JENSEN.

91. Based upon BERSCHBACK'S relationship with CHIEF JENSEN, and the financial and professional consequences BERSCHBACK would face if he charged a member of CHIEF JENSEN's family with a crime, or did not charge PLAINTIFF with a crime, BERSCHBACK and CHIEF JENSEN's knowingly, intentionally and willfully entered into an agreement either directly or implied to collude with one another so as to maliciously prosecute PLAINTIFF.

92. PLAINTIFF has prevailed in the action out of GROSSE POINTE WOODS, as of 10-9-2019 the case is forever barred from coming before the courts due to a fatal flaw in the case.

93. On May 9th PLAINTIFF made a complaint to CPS regarding Dan JENSEN Jr. and LISA THIEL. Shortly thereafter CPS referred the complaint to GROSSE POINTE PARK for criminal investigation. Due to unknown Jurisdictional issues, GROSSE POINTE PARK referred the matter to GPW for investigation.

94. Shortly after the May 8th, 2019 Exchange, Dan JENSEN Jr. submitted a complaint to 3rd CC for a personal protection order, that was granted "ex parte."

95. Also around this time, CHIEF JENSEN knowingly, willfully and intentionally violated MCL 28.214 by accessing PLAINTIFF'S LEIN information. Jensen identified, through CLEMIS (a criminal justice information system owned and operated by OAKLAND COUNTY) that a police report had been filed

on or about 1/20/2018 in Plymouth township for larceny. whereas charges had been abandoned by WAYNE COUNTY.

96. Upon learning of the police report, CHIEF JENSEN then contacted KAYZAK et al and WAYNE COUNTY et al. and asked for the long since abandoned felony charges requested out of Plymouth Township from 1/2018, to be approved. Notably, prior to these events, the only legal action was a small claims case out of Plymouth that was dismissed.

97. CHIEF JENSEN knowingly, willfully and intentionally conspired to violate PLAINTIFF'S rights by colluding, either with an implied or direct agreement, with MICHAEL KAYZAK et al and WAYNE COUNTY et al. to ensure PLAINTIFF was maliciously prosecuted based upon the lack of probable cause whereas PLAINTIFF prevailed.

98. WAYNE COUNTY, through it's practices or polices, knew, or should have known, that approving charges for a dismissed small claims case was not permissible as collateral estoppel applied. Further, if WAYNE COUNTY challenged the Plymouth district court's ruling, WAYNE COUNTY unequally applied it's efforts to accommodate CHIEF JENSEN to the detriment of PLAINTIFF.

99. On 9/13/2019 PLAINTIFF Prevailed in this action when the Felony Larceny Case from Plymouth was dismissed with prejudice in 3rd Circuit Court.

100. On or about 5/13/2019 3rdCC approved the Ex-Parte PPO filed by Dan JENSEN Jr., against PLAINTIFF. The WAYNE COUNTY Sheriff was enlisted to provide service.

101. WAYNE COUNTY, as required by law and/or policy, was not paid for having provided this service. BENNY NAPOLEAN, upon direction of CHIEF JENSEN, instructed a subordinate to threaten, intimidate and harass PLAINTIFF for unlawful reasons. Upon request from CHIEF JENSEN, BENNY NAPOLEAN knowingly, willfully and intentionally conspired with CHIEF JENSEN to violate plaintiff's rights.

102. Process was not served as of 5/31/2019, though contact had been made by telephone with PLAINTIFF by Corporal Clifton Nealey. Arrangements were made to meet the following Monday (6/3/2019). Corporal Nealey Notified PLAINTIFF action was an Ex-Parte motion which ordered PLAINTIFF to stay 100 yards or more away from Dan JENSEN Jr. or his home.

103. Upon PLAINTIFF having met with Cpl. Clifton Nealey a on 6/3/2019, in order to obtain printed copies of the PPO (after having been arrested on 5.31.2019 and orally served by GPW police), Nealey made a spontaneous statement that "You must have pissed off someone important". This statement was made to PLAINTIFF while PLAINTIFF'S father was a witness. Upon inquiry,

. Nealey stated "This was handed to me by BENNY NAPOLEAN'S immediate staff and I was told this one came straight from the Sheriff himself" Cpl. Nealey also stated he was instructed to arrest PLAINTIFF on warrants, though WAYNE COUNTY Sheriff's typical practice is to only serve process but not arrest for minor warrants that PLAINTIFF, at the time, had issued for his arrest (driving on a suspended license, probation violation, etc.). Lastly, Nealey stated he was instructed to somehow give PLAINTIFF a hard time in unspecified and discriminatory ways, though he would not elaborate other than he chose not to.

104.     As PLAINTIFF prepared to pick up his daughter from LISA THIEL, whom lived with Dan JENSEN Jr, PLAINTIFF told LISA THIEL he himself would not be picking up minor child. Instead, one of his family members would do so. In a ploy designed to lure PLAINTIFF into unwittingly violate a 3rd Circuit ex-parte order and have PLAINTIFF arrested, and with the help of CHIEF JENSEN, LISA THIEL stated child would only be released to PLAINTIFF if he arrived himself AND that the location of pickup was at Dan JENSEN Jr's home.

105.     Unknown to LISA THIEL, PLAINTIFF was aware of the "ex parte" order. Therefore PLAINTIFF arrived for pickup after having identified a location within sight of the front porch of Dan JENSEN's home, but beyond the 100 yard requirement per the PPO. Unfortunately, what PLAINTIFF did not expect was 1: two GPW police cruisers to have the block staked out (knowing that PLAINTIFF had been lured there) and 2: that CHIEF JENSEN had already conspired with the WAYNE COUNTY Prosecutor et al. in order to have the Plymouth warrant illegally and maliciously issued.

106.     Prior to the custody exchange, police reports show CHIEF JENSEN had called GPW to ask for PLAINTIFF to be arrested on a felony warrant at a custody exchange, in front of minor child, and also to serve the PPO.

107.     Though GPW Police report shows CHIEF JENSEN knew about the Felony Warrant, GPF and CHIEF JENSEN had no legitimate authority to access PLAINTIFF'S LEIN information.

108.     CHIEF JENSEN Perjured himself in 3rd Circuit Family Court on or about 12/1/2019, stating the GPW police report is wrong and that he never knew about the felony warrant ahead of time.

109.     CHIEF JENSEN's cellular phone records show calls made to the WAYNE COUNTY prosecutor at the exact time of the incidents. Notably, the Felony warrant out of Plymouth was signed and entered into LEIN ONLY 10 hours before CHIEF JENSEN called GPW to advise them of the warrant and ask for PLAINTIFF to be arrested.

110.     MSP performed a diligent investigation as to the origin of CHIEF JENSEN's knowledge of

PLAINTIFF'S LEIN information, but were unable to identify the source.

111.    CLEMIS and WAYNE COUNTY prosecutors office are knowingly, willfully and intentionally illegally disseminating PLAINTIFF'S LEIN information to CHIEF JENSEN for personal gain.

112.    MSP received an "Audit Trail" from OAKLAND COUNTY'S CLEMIS division, a system used by GPF public safety, which, by law, is supposed to show every time it's system was used to disseminate information related to PLAINTIFF. This audit trail contained no information regarding the GPF having ran PLAINTIFF'S information. Conspicuously absent was a log of GPF having run PLAINTIFFS information through their system, while PLAINTIFF watched, which is GPF Policy for all persons having contact with GPF public safety at their service window.

113.    CLEMIS, owned by OAKLAND COUNTY, knowingly, intentionally and willfully does not keep accurate records that show every time PLAINTIFF'S information is disseminate in their system. Discovery is needed to ferret out the exact mechanism that allows for said abuse, but the records shown to MSP were known by PLAINTIFF to be inaccurate from his own personal knowledge.

114.    CLEMIS is required by law to criminally prosecute those who abuse it's information system, as it is owned by an Agency which is, in part, federally funded, and also specifically subject to the CJIS statute.

115.    CLEMIS will prosecute those who abuse it's system. In 2011, Leon Walker was charged with a Felony Under this statute for a CJIS violation.

116.    To date, Leon Walker is the ONLY person EVER charged by OAKLAND COUNTY for having misused it's Criminal Justice Information System (CJIS). Of significant interest to this 14th amendment complaint is that the alleged victim in this case was an OAKLAND COUNTY Employee.

117.    OAKLAND COUNTY et al knowingly, intentionally and willfully disseminated PLAINTIFF'S LEIN information to parties whom sought it for personal gain, and did not keep accurate records as to each time the information was disseminated.

118.    Despite PLAINTIFF'S complains and direct discussions with the executive management of CLEMIS, OAKLAND COUNTY et al knowingly, willfully and intentionally continued to allow it's system to disseminate information contain in it's system to CHIEF JENSEN for his own personal reasons, and did nothing to stop CHIEF JENSEN, such as suspending the GPF

CLEMIS terminal.

119.   Founded in 1986, CLEMIS has only prosecuted one person in the entire history of it's existence, and only because the alleged victim was an OAKLAND COUNTY Employee.  PLAINTIFF believes indisputable proof that OAKLAND COUNTY, et. al. Is violating PLAINTIFF'S 4th and 14th amendment rights, guaranteeing PLAINTIFF to remain free from unlawful search and seizure as well as providing unequal protections. respectively.

120.   On or about JULY 1st, 2019, LISA THIEL again began violating the 3rd Circuit Court of MICHIGAN Custody order by refusing to provide minor child to PLAINTIFF for parenting time.

121.   Approximately 40 days after LISA THIEL stopped complying with the 3rd Circuit Court of MICHIGAN custody order, LISA THIEL and PLAINTIFF both attended court ordered mediation with Attorney Ann Tobin in GROSSE POINTE WOODS, Mi.

122.   During the mediation, a crime was committed.  LISA THIEL offered a highly unfavorable settlement to PLAINTIFF and stated that if he did not agree to the new custody settlement, she would continue to violate the court order and not allow PLAINTIFF to see his minor child.

123.   LISA THIEL's conduct stated she would injure PLAINTIFF by denying PLAINTIFF the parenting time he was entitled to by ORDER of the 3rd Circuit Court of Michigan in an effort to compel PLAINTIFF to do an act against his will.  This is a violation of MCL 750.213.

124.   Though all reasonable minds agree the "value" being extorted is in fact priceless, for the purposes of law, PLAINTIFF was being extorted out of the tax benefit of additional time with a dependent in his care as well as child support.

125.   On 2/13/2020, at a bond hearing and with several presumably highly credible witnesses (HON. RUSSELL ETHRIDGE, ALCORN, GARY BRESNEHAN, LISA AKERS and WARREN McALPINE), and while being recorded by the court's recording equipment, LISA THIEL stated she would not allow PLAINTIFF to exercise parenting time PLAINTIFF is entitled to by court order, unless PLAINTIFF signed an unfavorable consent order.  PLAINTIFF would not sign the order without appropriate modifications, which PLAINTIFF made, and subsequently LISA THIEL followed through with her threat to injure plaintiff, again a violation of MCL 750.213.

126.   A police report was filed alleging an extortion attempt.  Plaintiff is optimistic that the witnesses present will honor their obligations as officers of the court and report such conduct, but history has shown this will not happen.  Complaint will be amended to include this event as another

violation of PLAINTIFF'S 14th amendment right to equal protections.

127.     On October 9th, The very day the charges were being dismissed in the GROSSE POINTE
         WOODS case, at the very hearing, GARY BRESNEHAN notified PLAINTIFF he was charging
         PLAINTIFF with Stalking Dan JENSEN Jr. out of GPC municipal court.

128.     Notably, the GPW HON. Judge THEODORE METRY Disqualified himself from hearing the
         case, which then Left HON. RUSSELL ETHRIDGE as the new appointed Judge for the Case
         (CHARLES BERSCHBACK'S Law Partner in every respect other than name According to
    HON. RUSSELL ETHRIDGE, though Google searches show in hundreds of listings that countless
         variations of HON. RUSSELL ETHRIDGE'S law firm have included either CHARLES
         BERSCHBACK as an attorney for his, or listed in the title of the firm, such as BERSCHBACK,
         BERSCHBACK, ETHRIDGE). HON. Judge ETHRIDGE then disqualified himself sua sponte.
         The next Judge in Line was municipal Court Judge HON. Carl Jarboe. As HON. Judge Jarboe
         was notifying PLAINTIFF he would recuse himself, the dismissal was offered and PLAINTIFF
         waived the conflict.

129.     All GROSSE POINTE Judges, the last four remaining municipal Judges in the STATE OF
    MICHIGAN (five court rooms), are known to PLAINTIFF and therefor prohibited from
         presiding over any proceedings according to the MICHIGAN Rules of Judicial Conduct.

130.     The GROSSE POINTE Municipal Courts are designed to intercept cases from the Jurisdiction of
         3rd Circuit Court for two reasons: 1) Protect influential GROSSE Pointers from Criminal
         Prosecution (CHIEF JENSEN himself prevented the prosecution of Edsel Ford for multiple
         crimes despite overwhelming evidence). Conversely, 2) Maliciously prosecute "outsiders" that
         are perceived to be threats to our way of life or are known adversaries.

131.     The GROSSE POINTE Court's are the only remaining municipal courts in the STATE OF
         MICHIGAN and are fundamentally biased, acting as reinforcement and re-enforcement for the
         Public Safety Departments, rather than an entirely separate entity.

132.     Despite overwhelming conflict, HON. RUSSELL ETHRIDGE refused to disqualify himself
         from the second case, which did not originate out of GPW, but instead directly came from GPC
         public safety. This even though an entire element of the Stalking Case originated out of GPW
         under the prosecutor CHARLES BERSCHBACK.

133.     HON. RUSSELL ETHRIDGE knowingly, willfully and intentionally misrepresented his
         business and personal relationship with CHARLES BERSCHBACK so as to avoid disqualifying
         himself. These misrepresentations were made at no less than five hearings.

134.   Despite well established case law, HON. RUSSELL ETHRIDGE allowed the re-prosecution of the charge of "Malicious use of a telecom device" that was dismissed with prejudice. This fact, despite PLAINTIFF'S arguments that this prosecution failed the Blockburger Test and Actual Evidence test. PLAINTIFF motioned for exclusion under "Double Jeopardy" and was denied.

135.   A key witness for the PLAINTIFF in the GPC misdemeanor Stalking case is a sitting appeals Court Judge, HON. Kristen Frank Kelley.

136.   During a key time in question, PLAINTIFF was at a small gathering with others, including HON. Judge Kelley.

137.   HON. Judge Kelley's son, and HON. RUSSELL ETHRIDGE'S daughter, for the purposes of this case, should be considered common law husband and wife due to their dedicated and monogamous relationship that has spanned over a decade.

138.   The MICHIGAN Rules on Judicial Conduct REQUIRE a Judge to be subpoenaed in order to testify at any proceedings.

139.   PLAINTIFF represents himself, in pro per, and requires a Judge's signature in order to issue a subpoena.

140.   HON. RUSSELL ETHRIDGE refused to sign this subpoena, claiming his desire to "not inconvenience a sitting appeals court judge." This was despite plaintiff's clear argument to the court that Hon. JUDGE KELLEY'S testimony was likely to benefit the defense of PLAINTIFF (in this case).

141.   Somehow, instead of appointing an officer of the COURT,

142.   HON. RUSSELL ETHRIDGE'S actions and rulings are in direct contravention to the MICHIGAN Rules on Judicial Conduct, MICHIGAN Rules of Professional Conduct and the MICHIGAN Court Rules.

143.   On 2-5-2020, PLAINTIFF Prevailed yet again in a case that is fundamentally malicious - the misdemeanor stalking case from GPC was dismissed. Again, new charges were filed.

144.   HON. RUSSELL ETHRIDGE violated PLAINTIFF'S rights willfully, intentionally and with full knowledge of his actions, as evidenced by the transcripts from the GPC Municipal Court Proceedings. These rulings, though the case has been dismissed, are the FOUNDATION for aggravated stalking charges against PLAINTIFF, which then create two additional felony charges of Using a Computer To Commit a Crime (felony).

145.     Based upon HON. RUSSELL ETHRIDGE'S having improperly presided over PLAINTIFF'S
         proceedings as a defendant, WAYNE COUNTY et al Prosecutors office, and BRESNEHAN,
         have built a monumental house of cards that is resulting in 5 felonies and two misdemeanors, for
         a total potential incarceration of 32 years.

146.     In mid June 2019, Detective CHALUT received the complaint PLAINTIFF had filed with CPS.
         In response to receiving the complaint, CHALUT 1) Called the suspect in the case to notify
         them of what the allegation were then 2) Immediately terminated the case without so much as
         calling the complaining witness to provide a statement.  CHALUT knew the allegations were
         of a particularly serious nature and also knew that he was choosing to not investigate the
         allegations, unreasonably, based upon CHALUT'S relationship with suspects father, CHIEF
         JENSEN.

147.     PLAINTIFF filed a complaint with GPW public safety, regarding CHALUT'S violation of the
         Crime Victims Rights act and complained that LISA THIEL and DAN JENSEN JR were
         testifying in court, under oath, that CHALUT was providing them with PLAINTIFF'S LEIN
         information.

148.     PLAINTIFF also protested at Polling locations with a sign that contained allegations contained
         in this complaint.  Upon learning of PLAINTIFF'S political activities, CHALUT informed
         multiple persons at polling locations, including a conversation with CHALUT'S wife via mobile
         phone that PLAINTIFF could overhear, that "PLAINTIFF does not have a license. Call me if
         you see him driving and I will have him arrested.".  This is a CJIS violation.

149.     GPW, due to it's practices, policies and procedures, knowingly, willfully and intentionally
         allowed CHALUT to repeatedly violate PLAINTIFF'S  4th and 14th Amendment civil rights by
         disseminating PLAINTIFF'S LEIN information to PLAINTIFF'S detriment.  Even after
         PLAINTIFF complained to GPW Lt. Gardzella, CHALUT continued to violate CJIS statute by
         disseminating PLAINTIFF'S LEIN information for CHALUT'S perceived personal gain by
         participating in CHIEF JENSEN, DAN JENSEN JR and LISA THIEL'S conspiracy to violate
         PLAINTIFF'S rights.

150.     PLAINTIFF began investigating for himself to ascertain who knew what in relation to the LEIN
         violations and other matters to eventually effectuate the complaints contained herein.  One such
         action was a FOIA request that was filed on 8/2/2019 with GPF police ("FOIA REQUEST #1").

151.     By 8/5/2019, before the GPF FOIA Coordinator even logged having received FOIA REQUEST
         #1, the FOIA REQUEST #1 was in the possession of CHIEF JENSEN, DAN JENSEN JR, LISA

THIEL AND DONALD WHEATON, at 3rd Circuit Court, where DEFENDANTS attempted to submit PLAINTIFF'S FOIA request to HON. Judge Adel Harb for his consideration in the family court case due to a perceived relevance related to to the mental health of PLAINTIFF. HON. Adel Harb rightfully denied consideration.

152. Now attempting to identify the source of the "leak" of a publicly owned document, FOIA REQUEST #1, which also was not redacted as to it's identification of a minor who was the complainant of a crime, and was also highly unlikely to yet be subject to FOIA, PLAINTIFF filed another FOIA request to see the FOIA Log ("FOIA REQUEST #2).

153. GPF FOIA coordinator logged that PLAINTIFF'S original FOIA request was marked received on Monday, 8/5/2019, AFTER it was already submitted to 3rdCC. The FOIA Coordinator was not working at the time the complaint was actually delivered to GPF on Friday August 2nd at approximately 3:30pm.

154. PLAINTIFF attended a CITY council meeting and began to complain to GPF Mayor THEROS and the GPF CITY attorney BURGESS.

155. In an apparent attempt to fraudulently mitigate culpability, CHIEF JENSEN had Dan JENSEN Jr. File a FOIA Request on 8/6/2019. Miraculously, Dan JENSEN's request was filled the very next day on 8/7/2019. PLAINTIFF'S original request was filled on 8/8/2019.

156. In further attempts to ferret out fraud, and also prove to the family Court that the GPF is biased for reasons that are not pertinent in this complaint, CHIEF JENSEN was subpoenaed and eventually examined under oath. On or about October 10th CHIEF JENSEN testified under Oath in 3rd Circuit court and committed perjury.

157. CHIEF JENSEN indicated he emailed the un-redacted FOIA REQUEST #1 to his son, DAN JENSEN Jr. one hour after it was submitted to the CITY. Presumably, this allegation was       to avoid potential criminal penalties, as the theft of government property is typically prosecuted as theft of Copy Paper, Toner and use of the equipment. An e-mail from JENSEN's own mobile device would circumvent this liability. CHIEF JENSEN'S son, under oath in a different court on       a different date, denies this is how he came into possession of the FOIA request. Dan JENSEN Jr.       stated the email was never sent. Either CHIEF JENSEN or Dan JENSEN Jr have perjured       themselves. The evidence will show that only CHIEF JENSEN stood to gain by perjuring       himself, and presumably discovery will settle who perjured themselves to PLAINTIFF'S injury       and detriment, once and for all.

158. PLAINTIFF, with his own eyes, saw the document that CHIEF JENSEN possessed at court, and

flaunted in an apparent attempt to intimidate PLAINTIFF.

159. The document CHIEF JENSEN had was a perfect photocopy of my original FOIA request, which was provided as part of discovery in our family court case. It was also double sided. This was the product of a copy, not an email.

160. CHIEF JENSEN knowingly and willfully stole government property, violated a minors rights related to crime victim privacy, and perjured himself under oath to cover up the crimes.

161. CHIEF JENSEN'S perjury was also related to having had conspired with his son, Dan JENSEN Jr. to create an apparently legitimate record with the CITY so as to avoid criminal prosecution for the theft of government property.

162. CHIEF JENSEN knowingly, willfully and intentionally violated PLAINTIFF'S rights by accessing his LEIN Information, conspiring with the WAYNE COUNTY Prosecutor to have PLAINTIFF Charged for the abandoned case out of Plymouth (without probable cause) and to have THIEL arrested by acting in concert with GPW et. al, LISA THIEL, Dan JENSEN Jr and GROSSE POINTE FARMS et al.

163. CHIEF JENSEN is not protected by government immunity for the aforementioned actions.

164. LISA THIEL and PLAINTIFF share a child and must communicate. Via Text, Email and Our Family Wizard, a court messaging service, LISA THIEL and PLAINTIFF have had countless acrimonious conversation which have often strayed from the topic of Parenting and also have frequently included name calling by LISA THIEL, and also, though much less frequently, by PLAINTIFF.

165. During the Summer of 2019, THIEL repeatedly complained to GPC Public Safety about being stalked by LISA THIEL and DAN JENSEN JR. ALCORN refused to accept any police reports and insisted the events needed to be documented.

166. On 8/18/2019, LISA THIEL and DAN JENSEN JR. Appeared within line of site during PLAINTIFF'S parenting time at at PLAINTIFF'S mothers house and the local PARK two blocks away. Both Places PLAINTIFF had no legitimate business and merely entered the private drive and Parking lot, respectively, only to drive away moments later. PLAINTIFF notified GROSSE POINTE et al, who's officers stated they would send out a squad car. This never happened. One hour later DAN JENSEN JR and LISA THIEL called police on PLAINTIFF for a perceived parenting time violation and GROSSE POINTE et al responded in force. LISA THIEL and DAN JENSEN both admitted to responding officers that they did drive by to "See if

minor child was OK". GROSSE POINTE et al stated this is not a crime. PLAINTIFF filed a
police report anyway with two witness statements.

167. One week later, approximately, in Dearborn, despite having been notified in writing that pickup
time would be at 6pm at the Dearborn Police station, LISA THIEL and DAN JENSEN JR
appeared within line of sight with no legitimate purpose, even calling Dearborn Police for
assistance, strictly to harass and intimidate PLAINTIFF. Having been a pattern of two or more
acts, this should have triggered a stalking charge out of GPC, PLAINTIFF"S home CITY.

168. PLAINTIFF re-visited GPC, attempted to initiate a Stalking Complaint, and was flatly denied.

169. During pre-trial matters in GPC Court, PLAINTIFF motioned for HON. Judge ETHRIDGE'S
disqualification, which was denied. Being a single Judge Courtroom, THIEL also motioned for
a new hearing through the SCAO, per court rules, to have the hearing de novo in another court
room. The motion was granted.

170. Having been re-assigned to HAMTRAMCK, the hearing was held for HON. Judge
ETHRIDGE'S disqualification.

171. CHIEF JENSEN, LISA THIEL and DAN JENSEN JR conspired with ALCORN to harass and
intimidate PLAINTIFF.

172. After the first hearing, which was favorable to the PLAINTIFF, ALCORN attempted to serve
PLAINTIFF with a "Show Cause for PPO Violation", which is a civil matter, while in the
HAMTRAMCK District Court. PLAINTIFF refused service and asserted privilege.

173. Having almost no experience with service, ALCORN had no knowledge of Court Rules and was
enraged by PLAINTIFF'S refusal.

174. Bresnehan, after consulting with ALCORN, advised ALCORN to follow PLAINTIFF outside
and throw the service inside his vehicle as he left.

175. ALCORN, instead of acting as any trained or knowledgeable process server and dropping the
complaint at PLAINTIFF'S feet, perhaps, instead tried extreme and inappropriate means to
compel PLAINTIFF to accept service.

176. ALCORN, knowingly, willfully and intentionally harassed, intimidated, assaulted and battered
PLAINTIFF for approximately 10 minutes, from the 3rd floor of HAMTRAMCK district court to
the Parking lot outside. Video of the incident is in the possession of PLAINTIFF.

177. ALCORN was acting in his capacity as a private citizen while attempting to serve process

because 1) The matter for which process was being served is a civil matter 2) ALCORN, a GPC Officer, was not appointed by 3rd Circuit Court as a process server, 3) ALCORN was outside of his jurisdiction, and 4) ALCORN was engaged in a frolic of private business for DAN JENSEN JR and CHIEF JENSEN.

178.    Due to ALCORN'S initial harassment from the 3rd floor of HAMTRAMCK COURT to the first floor, and across the entire large building, PLAINTIFF entered the police station lobby at Hamtramck CITY hall and explained a GPC Officer, armed with a gun, is Harassing PLAINTIFF. HAMTRAMCK, et al stated "since he is an officer he is not doing anything wrong and we're not going to do anything."

179.    HAMTRAMCK, et al then followed PLAINTIFF via camera and watched ALCORN harass, intimidate, assault and batter PLAINTIFF, including brandishing a firearm, and did nothing to protect PLAINTIFF who by all reasonable standards asked for protection and needed protection from ALCORN.

180.    Even as an officer, ALCORN had no right to assault PLAINTIFF. But ALCORN was not acting as an officer, he was acting in his personal capacity attending a motion to disqualify a judge, a motion that neither required nor needed ALCORN'S presence for any conceivable reason.

181.    ALCORN Should have been arrested by Hamtramck for Assault, Battery, Harassment and Brandishing a firearm.

182.    PLAINTIFF 200lbs, never touched ALCORN (300 lbs), except possibly inadvertently, other than to remove ALCORN'S hands from his body. Nevertheless, HAMTRACK et al, Police Officers submitted statements to their department in direct and significant conflict with the video itself, for the purposes of wrongfully arresting PLAINTIFF. The only officer that accurately stated the true nature of events was the officer controlling the camera system.

183.    GJORKA, after witnessing the video, knowingly and intentionally filed a complaint with WAYNE COUNTY et al prosecutor's office despite the absence of probably cause. ALCORN was never arrested nor charged, despite PLAINTIFF'S complaint.

184.    WAYNE COUNTY et al. Prosecutors Office, KIM WORTHY, GARY BRESNEHAN and HILLARY ROUSSEAU, while conspiring with CHIEF JENSEN, LISA THIEL and DAN JENSEN JR knowingly and willfully approved charges which clearly lacked probably cause. This was an intentional act in order to maliciously prosecute PLAINTIFF in a coordinated effort, in concert with other DEFENDANT'S, to deprive PLAINTIFF of his rights, to falsely arrest PLAINTIFF, all with a common goal to effectuate the loss of custody, through a felony

conviction, of PLAINTIFF'S daughter and to otherwise willfully and intentionally harass
PLAINTIFF and inflict emotional distress.

185.   WAYNE COUNTY et al. Prosecutors Office, KIM WORTHY, GARY BRESNEHAN and
HILLARY ROUSSEAU, while conspiring with CHIEF JENSEN, LISA THIEL and DAN
JENSEN JR conspired to violate PLAINTIFF'S rights, particularly PLAINTIFF'S 14th
amendment rights to equal protections and PLAINTIFF'S 4th amendment rights by maliciously
prosecuting PLAINTIFF without probably cause (Misdemeanor stalking case was dismissed
NOLE PROSEQUI). Additional charges, again filed immediately after the previous were
dismissed, will be included in this complaint at a later date (amended) or filed in a separate
action.

186.   ALCORN knowingly and willfully assaulted PLAINTIFF, unprovoked, then misrepresented
himself to have been acting in his official capacity when he knew, or should have known he was
not capable of acting in his official capacity under the circumstances.

187.   Under examination in HAMTRAMCK district court, ALCORN was asked by PLAINTIFF (in
pro per) "When are you on duty and when are you off duty?" ALCORN'S response was "That's
a personal question. I suppose the only time I am off duty is when I drink alcohol."

188.   GROSSE POINTE et al knew, by it's Policies and practice's, allowed it's officer to violate
PLAINTIFF'S rights under color of law by both representing himself as a police officer, well
outside of his Jurisdiction, and while impersonating an officer of the 3rd Circuit Court. GROSSE
POINTE et al never adequately trained ALCORN, the DEPUTY CHIEF, when he is or is not
able to act as a Police Officer. When an officer is actually ON DUTY or OFF DUTY is a critical
instruction that must be given to all officers so as to protect the citizens of the United STATE at
large. Though PLAINTIFF acknowledges, and agrees, that when any citizen, including officers,
see a felony being committed, especially when a persons safety is in jeopardy, their morals
should compel them to act to protect their fellow man. Critically, there are circumstances when
an officer can NOT act as he would in his own jurisdiction, or lives could and would be lost,
among other negative consequences. For example, if an officer OUTSIDE of his jurisdiction
were to observe young teenagers drinking through a window of a private domicile, the officer
could not claim exigent circumstances to enter the premises and bring the criminals to justice.
This type of event would require calling the local Jurisdiction. Nor can an officer pull over
private citizens when beyond certain distances from his own Jurisdiction. GROSSE POINTE et
al was negligent in it's training of ALCORN by not communicating a clear policy or practice so
as to prevent deputizing an officer who thinks he can exercise police privileges across the entire

United States.

189.    PLAINTIFF has not yet prevailed in this action, and will amend his complaint accordingly to include violation's of PLAINTIFF'S 4th Amendment Rights at the appropriate time. Currently, PLAINTIFF includes these actions in this complaint as a violation against PLAINTIFF'S 14th amendment rights, as well as part of the conspiracy against rights.

190.    While incarcerated in HAMTRAMCK, PLAINTIFF was fed two bologna sandwiches per day, for two days in a row, totaling 300 calories per food per day, without any access to water other than what was in the toilet bowl due to a broken faucet. Requests for food and water were denied by HAMTRAMCK Police.

191.    HAMTRAMCK et al and their Police knowingly, willfully and intentionally refused to provide adequate food even in the context of a concentration camp. PLAINTIFF calculates each bologna sandwich to contain 150 calories, according to readily available data. Feeding a prisoner 300 Calories per day is undeniably a willful violation of the 8th amendment of the U.S. Constitution as cruel and unusual punishment.

192.    Throughout the course of the above conduct, numerous complaint were leveled to GROSSE POINTE FARMS CITY Attorney BURGESS and THEROS about GROSSE POINTE FARMS et al Misconduct, through it's Police CHIEF, CHIEF JENSEN.

193.    Early on, approximately 8/19/2019, BURGESS and THEROS asserted they would likely hire an outside law firm to investigate the allegations, but never did so.

194.    BURGESS, on or about 9/1/2019, learned that CHIEF JENSEN lied to him about exactly how DAN JENSEN SR and JR came into possession of the disputed and stolen FOIA REQUEST #1 on AUGUST 5th, 2019. Upon PLAINTIFF'S investigation, BURGESS conceded he had been lied to by CHIEF JENSEN and assured PLAINTIFF that "Steps had been taken to stop the improper influence."

195.    IF steps were taken, they were inadequate had no effect on CHIEF JENSEN, who continued to knowingly, willfully and intentionally conspire with others to violate PLAINTIFF'S rights.

196.    This lack of effect was communicated to THEROS and BURGESS, who each individually stated they would take no further action and CHIEF JENSEN "could do as he pleases because he is the police CHIEF."

197.    BURGESS and THEROS refused, even publicly, to do anything about the crimes being committed by CHIEF JENSEN. Verbatim, THEROS told PLAINTIFF in the middle of a public

comment portion of the CITY Council Meeting, that "If you see JENSEN in that chair next month, you know we didn't do anything about it."

198.     During the public comments section of the council meeting, CHIEF JENSEN's wife LAURIE JENSEN approached the podium and verbally attacked PLAINTIFF, calling him a drug addict, at which point PLAINTIFF protested, but was told "she can say whatever she wants". LAURIE JENSEN continued and stated, as a matter of fact, that PLAINTIFF has been diagnosed as a "SOCIOPATH", which is more commonly referred to as a psychopath.

199.     GROSSE POINTE FARMS et. Al, THEROS and BURGESS were grossly negligent, as their conduct was outrageous in regards to allowing a member of the public to continue making obviously injurious false accusations and statements of fact, in particular after PLAINTIFF protested.

200.     CHIEF JENSEN, GROSSE POINTE FARMS et al, by it's policies and procedures and THEROS and BURGESS, by their communicated direct indifference and failure to intervene, violated 18 U.S.C. 242.

201.     GROSSE POINTE FARMS owns the radio broadcast system that is used by all of the GROSSE POINTES' public safety departments.

202.     PLAINTIFF was informed by a 3rd party barely known to him, that DAN JENSEN JR, and LISA THIEL were drinking and driving after leaving a bar at 9pm with their 45 day old infant in hand.

203.     PLAINTIFF notified GPW police that DAN JENSEN JR and LISA THIEL were likely returning home, driving under the influence, with a baby endangered, and to please investigate for the well being of the public at large.

204.     Dan JENSEN Jr. Was notified in advance of the call for service, and GROSSE POINTE WOODS arrived at the Home of DAN JENSEN JR 15 minutes After the radio call, then left upon seeing the vehicle already home, without investigating.

205.     GROSSE POINTE WOODS et al averages a response time of 3-4 minutes.  NEVER is response time anywhere near 10 or even 15 minutes, for anything, let alone when a child was in danger.

206.     GROSSE POINTE WOODS et al refused to diligently investigate the allegation of drunk driving due to the suspect's relation to CHIEF JENSEN

207.     The day after the aforementioned drunk driving incident, the exact same circumstances

happened at a different location, strictly by coincidence.  PLAINTIFF was notified by the same
concerned third party of DAN JENSEN and LISA THIEL drinking and driving with the same 45
day old infant in tow at 5pm on a Sunday.

208.    Instead of calling police due to their obvious indifference, PLAINTIFF confronted LISA THIEL
during their custody exchange for minor child they shared (LISA THIEL has multiple children
with multiple different fathers).  PLAINTIFF was concerned he was about to release his
daughter to an intoxicated driver, and was justified in inquiring as to LISA THIEL and DAN
JENSEN Jr's ability to drive after PLAINTIFF was informed about their alcohol consumption
within the past hour.  Merely for asking if LISA THIEL was intoxicated before she or her
husband drove with PLAINTIFF'S minor child in the car, PLAINTIFF was charged with
stalking.

209.    LISA THIEL and Dan JENSEN, admittedly, frequently drive by PLAINTIFF'S home and
families properties to surveil PLAINTIFF during parenting time PLAINTIFF'S minor child.
This has all been admitted by DAN JENSEN JR and LISA THIEL directly to the GPC Police,
GPC municipal Court and 3rd Circuit Court.  LISA THIEL called for no less than four welfare
checks in a single night to both Dearborn and GPC police after having been told "Minor Child
has a mild fever but I(PLAINTIFF) know exactly what to do.  If you have any suggestions then I
am willing to hear them in order to effectuate a continuity of care for our minor child".  LISA
THIEL took this as a green light to knowingly and willfully stalk and harass PLAINTIFF by
making false reports to police agencies.

210.    Dearborn and GPC police showed up twice each to two separate properties.  Dearborn was very
reasonable and arrived then promptly left without incident.  GPC, despite having been called in
advance and advised minor child and PLAINTIFF were OK, chose to come anyways and have
their officer, SREBERNAK, pound on PLAINTIFF'S door for 15 minutes, terrifying
PLAINTIFF'S partner.  SREBERNAK demanded to see PLAINTIFF, stated "we heard him in
there", knowingly, willfully and intentionally harassing and intimidating PLAINTIFF and
PLAINTIFF through his family.  Further, SREBERNAK was    not actually there for the official
reason of a welfare check, but actually to ascertain my location for purposes of LISA THIEL's
civil action in 3rd Circuit Court, and to ascertain if PLAINTIFF had a parenting time supervisor
as was required at the time by a 3rd Circuit Court Order.

211.    LISA THIEL, SREBERNAK, DAN JENSEN Jr. DAN JENSEN Sr, ALCORN, GROSSE
POINTE CITY et al, CHIEF JENSEN and KENNEDY, conspired to harass, intimidate and
assault PLAINTIFF, all the while refusing to even investigate any claims PLAINTIFF made of

being stalked, even though a repeated pattern of unconsented and unwanted contact was admitted by both DAN JENSEN JR and LISA THIEL.

212.    LISA THIEL and DAN JENSEN JR. Followed PLAINTIFF home from a custody exchange (approximately 4 miles) on or about JANUARY 18th. This fact was admitted in GROSSE POINTE MUNICIPAL COURT shortly thereafter. PLAINTIFF called GPC Police and was met at his home minutes later by an officer, JOSEPH ADAMS. ADAMS immediately began claiming PLAINTIFF was paranoid and even stated in the incident report that PLAINTIFF believed every car driving by was DAN JENSEN JR and LISA THIEL, despite PLAINTIFF having advised ADAMS that PLAINTIFF was able to see the drivers of the vehicle and the license plate number. ADAMS dismissed PLAINTIFF'S complaint outright. Without any logic or reason, this report was included in the now dismissed Misdemeanor stalking case against PLAINTIFF, presumably as purported evidence that PLAINTIFF is harassing LISA THIEL and DAN JENSEN JR through misuse of emergency services, or possibly that PLAINTIFF perceives a threat that does not exist and therefor a motive for stalking has been established. Whatever the flawed logic, DEFENDANTS' claims against PLAINTIFF are nonsense.

213.    WAYNE COUNTY et al, KIM WORTHY, GARY BRESNEHAN, HILLARY ROUSSEAU, ALCORN, KENNEDY and GROSSE POINTE CITY et al knowingly, willfully and intentionally violated PLAINTIFF'S 4th amendment rights by maliciously prosecuting PLAINTIFF, without probably cause or merit, by using PLAINTIFF'S constitutionally protected activities (filing a true and accurate police report), somehow as evidence against PLAINTIFF in a now dismissed case.

214.    All defendants demonstrated gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." This is particularly evidenced by GPW Felony arrest practices on 5/31/2019, which did not follow any kind of procedure. The officers opened the front passenger door and ripped PLAINTIFF from the vehicle without so much as removing his seat belt.

215.    Due to all defendants actions, PLAINTIFF is unable to sleep and experiences significant stress and gastrointestinal issues, including having lose 30lbs from inability to eat. PLAINTIFF is in a constant STATE OF worry, and lastly experiences severe migraines 1x per week that result in vomiting. This condition only started after the defendants conduct caused the emotional distress.

216.    WHEATON, an attorney, knowingly and willfully submitted a forged drug test to 3rd circuit court, despite the owner of the facility having been subpoenaed and personally informing

WHEATON that the positive drug test was a forgery. Knowing the document was a forgery, WHEATON communicated to HON. ADEL HARB that the believed PLAINTIFF (in this action) was not in fact abstinent from drugs due to WHEATON'S production of a forged drug test. WHEATON now claims this was a set up and that is the reason for it's submission as evidence, though the record CLEARLY reflects otherwise.

217.    DEFENDANT prevailed in the above action brought forth by WHEATON's motion, as HON. ADEL HARB called as a witness the owner of ALL COUNTY TESTING to confirm the document was in fact a forgery. HON. ADEL HARB ruled that PLAINTIFF did not violate the Court's ORDER by failing to abstain from any type of Alcohol or Drug use.

218.    By bringing a false action against PLAINTIFF, WHEATON violated PLAINTIFF'S 4th AMENDMENT rights through malicious prosecution / abuse of process.

219.    LISA THIEL, CHIEF JENSEN and DAN JENSEN JR have submitted multiple forged documents to WAYNE COUNTY et al, KIM WORTHY, GARY BRESNEHAN and HILLARY ROUSSEAU to facilitate prosecution. A simple review of LISA THIEL or PLAINTIFF'S phone records reveals that the documents are a forgery, therefore WAYNE COUNTY et al, KIM WORTHY, GARY BRESNEHAN AND HILLARY ROUSSEAU knew, or should have known, that the documents were forgeries.

220.    PLAINTIFF is constantly paranoid that additional forgeries will surface, leaving THIEL to worry to excess and quadruple check all of his actions, record phone calls, videotape and record personal interactions so as to ensure he can't be the victim of another forgery that would likely result in the loss of custody of his daughter.

221.    THE GROSSE POINTE COMMUNITY consists of five separate municipalities: GROSSE POINTE CITY, GROSSE POINTE PARK, GROSSE POINTE FARMS, GROSSE POINTE SHORES and GROSSE POINTE WOODS.

222.    Each of the GROSSE POINTES maintains a MUNICIPAL COURT. Through grants, and indirectly, through the Cities, the MUNICIPAL COURTS receive STATE and Federal funds.

223.    THE GROSSE POINTE MUNICIPAL COURTS are the last five municipal courts remaining in the entire STATE OF MICHIGAN.

224.    Because these are the only municipal courts remaining in MICHIGAN, and are so small as to only require a part time Judge, the four Judges whom preside over the five GROSSE POINTE Municipal Courts are the only Judges in the entire STATE OF MICHIGAN whom are permitted

to simultaneously maintain employment as a JUDGE and also maintain gainful employment in the practice of law.

225.   The four Judges are:

GROSSE POINTE CITY:       HON. RUSSELL ETHRIDGE

                          Prosecutor CHARLES KENNEDY (HILDEW FINKS)

GROSSE POINTE PARK:       HON. CARL JARBOE

                          Prosecutor Dennis Levasseur (Bodman)

GROSSE POINTE WOODS:      HON. THEODORE METRY

                          Prosecutor CHARLES BERSCHBACK (CONTESTED)

GROSSE POINTE FARMS:      HON. MATTHEW RUMORA

                          Prosecutor WILLIAM BURGESS (DICKINSON WRIGHT)

GROSSE POINTE SHORES:     HON. MATTHEW RUMORA

                          Prosecutor Don DeNault ( O'rielly Rencillio)

226.   ACT 236 of 1961 consolidated the functions of limited jurisdiction courts, such as traffic and municipal courts, into DISTRICT COURTS. Through this act the cities are permitted to operate a "Municipal Violations Bureau" to accept responsibility of municipal infractions.

227.   With great effort, the GROSSE POINTES have compiled a Municipal Code that mirrors STATE Law, so as to intercept almost all criminal cases that would otherwise be routed to district courts. Substantial amounts of this Municipal Code that Mirror Michigan Compiled Laws have been modified, raising to the level of being unconstitutionally broad.

228.   The purpose of intercepting criminal cases, as stated by the CITY Attorney's and CITY Council's, is to prevent the inconvenience of the GROSSE POINTES' residents from having to attend a busy district court. Additionally, the GROSSE POINTES seek to intercept criminal cases from District courts so they may use their own discretion to violate the rights of over half of the Defendants that come before them. Simply put, if you are from GROSSE POINTE or hire one of the Grosse Pointe Judges or Prosecutors whom operate part time in their courtrooms, based upon statistical analysis, you will undeniably obtain a more favorable ruling. If you are not from Grosse Pointe, statistically, you will receive a less favorable ruling.

229.    As an exception to the previous allegation, if you are an enemy of one of the local municipalities or their politicians, the Municipal Courts will frequently and unjustly rule against DEFENDANTS.

230.    PLAINTIFF'S right of due process has been routinely and systematically violated by the GROSSE POINTE Municipal Court, violating PLAINTIFF'S right to due process.

231.    GROSSE POINTE WOODS has charged PLAINTIFF maliciously once as outlined above. Through the Police the threat of repeated and malicious prosecution and biased adjudication is not  only realistic, but inevitable.

232.    CHIEF JENSEN and GROSSE POINTE FARMS, et al claimed PLAINTIFF impersonated a police officer while calling OAKLAND COUNTY CLEMIS and their STATE AFFILIATES on recorded lines. These allegations are demonstrably false due to the recordings. The threat of arrest and prosecution has been leveled at PLAINTIFF by CHIEF JENSEN on no less than six occasions while attending proceedings  in 3rd Circuit Court of Michigan. Through the Police and city management, the threat of repeated and malicious prosecution and biased adjudication is  not only realistic, but inevitable.

233.    GROSSE POINTE CITY et al, and their Municipal Court, and HON. RUSSELL ETHRIDGE has caused significant psychological trauma by a flagrant disregard for Michigan Court Rules, Michigan Rules of Judicial Conduct and Michigan Rules of Professional Conduct. PLAINTIFF lives in constant fear of the next court hearing as the GROSSE POINTE MUNICIPAL COURT has shown a demonstrable and extreme pattern of bias that continued malicious prosecution and injury to PLAINTIFF by their unconstitutionally biased Municipal Court is not only realistic and, but it is also ongoing.

234.    HON. RUSSELL ETHRIDGE, during a recent hearing for felony charges, admitted having ex-parte communications with an interested party. ALCORN, who ETHRIDGE asked to investigate the legitimacy of PLAINTIFF'S motion to subpoena a critical witness. ALCORN intentionally tampered with the witness, withheld information, and now alleges the witness cannot provide any relevant testimony. PLAINTIFF'S right of due process was violated by these actions.

235.    ALCORN is a detective for GPC. HON. RUSSELL ETHRIDGE confused the Municipalities detective with that of a COURT OFFICER, and utilized ALCORN, as a city employee, as a COURT OFFICER. The size, nature, and close physical and operational proximity of the MUNICIPAL COURTS have therefor created a denial of due process for defendants that come before them, which is self evident.

236. At all times relevant herein, GPW, GPF, GPC, HAMTRAMCK, WAYNE COUNTY and OAKLAND COUNTY, by their own customs, policies and/or practices systematically failed to properly train, evaluate, supervise, investigate, review and/or discipline their employee's and police officers under their supervision, allowed, acquiesced in, and/or encouraged the other Defendants to function as police officers in other jurisdictions whilst engaging in frolic's of private and personal business, and to unlawfully confront,assault, batter, use excessive force, verbally abuse, humiliate, mistreat and falsely arrest, imprison and Maliciously Prosecute PLAINTIFF and thereby directly and proximately caused PLAINTIFF to be deprived of his liberty and his right to be free from the use of excessive force, false arrest, false imprisonment, unreasonable search and seizure, cruel and unusual punishment and other unreasonable intrusions against their persons without due process of law, in violation of the United States Constitution. . . .

237. At all times relevant herein, Defendants, by their own customs, policies, and/or practices or systematically failing to enforce their own rules and regulations pertaining to the use of force against, arrest, custody, detention and prosecution of citizens, including PLAINTIFF, in ' violation of all standards of decency and minimum requirements under the law and the Constitution, PLAINTIFF was deprived of his liberty and his right to be free from unreasonable searches and seizures, the use of excessive force, false arrest, false imprisonment, cruel and unusual punishment, malicious prosecution and other unreasonable intrusions against his person without due process.

238. PLAINTIFF contacted all defendants hundreds of times, cumulatively the calls exceeded one thousand phone calls, explaining exactly what crimes were being committed and what the evidence was collected. Instead of identifying means of investigation, DEFENDANTS offered nonsensical assessments that in an extreme stretch of the imagination could be theoretically true, but failed all reason and rationality tests. In short, DEFENDANT'S absolutely would not pursue justice for PLAINTIFF, but sought prosecutions for the most absurd of "transgressions.

Declined justice for PLAINTIFF:

1. STOP the admitted felony dissemination of PLAINTIFF's LEIN information.

2. Prosecute filing a felony false police report against PLAINTIFF in GPW and GPC.

3. Prosecute theft from the CITY of GPF by CHIEF JENSEN.

4. Pursue CHIEF JENSEN'S perjury under oath on record.

5. Investigate forged drug tests submitted to 3rdCC by WHEATON and CHIEF JENSEN.

6. Investigate forged phone records submitted to GPC Munic. Court by LISA THIEL and CHIEF JENSEN.

7. Investigate or charge Extortion or Stalking of PLAINTIFF by alleged "victim".

8. FRAUD, with conclusive evidence, committed by CHIEF JENSEN.

9. INVESTIGATE DUI with Plaintiff's minor child in car.

PLAINTIFF has been charged with a crime for:

1. Calling for a welfare check when PLAINTIFF's minor child went missing.

2. Communicating the intent to file complaint about inappropriate contact with minor.

3. Calling police about a drunk driver.

4. Confronting LISA THIEL for drinking and driving with minor in vehicle.

5. Inquiring as to the health care provider for minor which Plaintiff is entitled to.

6. Following 3rd circuit court order allowing face time calls to minor child.

7. Calling police to report stalking, even after DEFENDANT'S admitted behavior under oath.

8. Assaulting a police officer, who was by all definitions not on duty and who is on video assaulting plaintiff, harassing plaintiff and blocking plaintiff's means of exit.

239. At all times relevant herein GROSSE POINTE FARMS, GROSSE POINTE WOODS et al, GROSSE POINTE CITY et. al. WAYNE COUNTY et al and OAKLAND COUNTY et al, by their own customs, policies, and/or practices or systematically failing to enforce their own rules and regulations pertaining to the dissemination of information obtained through Criminal Justice Information Systems and failed to enforce their own rules and regulations pertaining to, under the color of law, the threat of malicious investigation and malicious prosecution, without

probable cause. The negligence on the part of the DEFENDANTS effectively denied PLAINTIFF freedom from unlawful search and seizure and due process under the 4th amendment, as well as guaranteeing all citizens equal treatment, guaranteed by the 14th amendment.

240.    That Defendants GPW, GPF, GPP, GPC and GPS , was deliberately indifferent to, and permitted and tolerated a pattern and practice of unreasonable searches and seizures by their officers, and also an outright refusal by any of their public safety departments to Document, Investigate and hold accountable those whom were stalking, extorting, harassing and threatening Plaintiff, entitling PLAINTIFF to damages and qualifying PLAINTIFF to seek injunctive relieve.

241.    That Defendants OAKLAND COUNTY, WAYNE COUNTY, GPW, JENSON and CHALUT knowingly, willfully and intentionally disseminated or allowed the dissemination of PLAINTIFF'S  LEIN information, entitling PLAINTIFF to damages and qualifying PLAINTIFF to seek injunctive relieve.

242.    That defendant OAKLAND COUNTY knowingly, willfully and intentionally does not comply with the CJIS statute and allows a "back door" means of access so their system may be used by all departments and officers whom subscribe to their service  for personal gain, a violation of all citizens in jurisdictions whom utilize the CLEMIS criminal justice information system, entitling PLAINTIFF to damages and qualifying PLAINTIFF to seek injunctive relieve.

243.    That the policies and practices complained of include, but are not limited to the following:

(a) Deliberate indifference in failing to train and re-train the law enforcement officers to follow constitutional precedent and legal guidelines in the detention and questioning of individuals, dissemination of LEIN information;

(b) deliberate indifference in failing to train and re-train Oakland County Sheriff Deputies in the application of reasonable inquiry regarding arrest and detention of individuals;

(c) deliberately encouraging an atmosphere of lawlessness by DEFENDANT'S when dealing with the public;

(d) deliberately indifferent and failure to, by Defendant's, to maintain a proper system for the investigation and review of all incidents of complaints regarding police and prosecutorial misconduct.

244.    That based on information and belief, lack of a system or specific systemic flaws in Defendant WAYNE COUNTY and OAKLAND COUNTY, HAMTRAMCK, GPW, GPP, GPF, GPC and

GPS review processes, including but not limited to the following:

(a) the failure of the Department's to investigate the violation of the 4th and 14th amendment incidents

(b) Officer's investigating incidents fail to include in their reports relevant factual information which would tend to contradict the statement of the police officers involved;

(c) incidents of of claims of officer misconduct are not reviewed for accuracy by supervisory officers. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information;

(d) permitting and encouraging a system of intimidation of citizens who attempt to file a complaint against a police officer or prosecutor.

WHEREFORE, Plaintiffs seek judgment against Defendants, in the amount of $10,000,000 (Ten Million USD), to which Plaintiff is entitled and which is reasonable, fair and just, plus costs, interest and attorney fees, together with exemplary and/or punitive damages.

## COUNT I MALICIOUS PROSECUTION AS TO, DONALD WHEATON, CHARLES BERSCHBACK, GARY BRESNEHAN, HILLARY ROUSSEAU, KIM WORTHY, JOHN ALCORN, GROSSE POINTE FARMS et. al., MICHAEL KAZYAK, WAYNE COUNTY et al. CITY OF GROSSE POINTE et al, CITY OF GROSSE POINTE WOODS, ET AL, .

245    Plaintiffs hereby re-alleges and incorporates by reference, Paragraphs 1 through 244 of Plaintiffs' Complaint, paragraph by paragraph and word for word, as if fully set forth herein.

246    DEFENDANTS acts were in violation of PLAINTIFF's fourth amendment rights against malicious prosecution.

247    DEFENDANTS knowingly, willfully and intentionally submitted false evidence to the prosecutors and to the courts so as to facilitate the (temporary) survival of their actions without probably cause or merit and knowingly, willfully and intentionally disseminated, or allowed dissemination, of DEFENDANT'S LEIN INFORMATINO.

248    DEFENDANTS knowingly, willfully and intentionally conspired to violate PLAINTIFF'S rights

by maliciously prosecuting PLAINTIFF, without probable cause, and with another intent aside from the interest of justice.

249   DEFENDANTS knowingly, willfully and intentionally conspired to maliciously prosecute PLAINTIFF so as to frustrate PLAINTIFF'S finances, work and court schedule by way of imprisonment and summons to court, and most importantly, frustrate PLAINTIFF's family court case so as to precipitate an unfavorable ruling in against PLAINTIFF in family court if PLAINTIFF failed to prevail in his criminal complaints as a defendant.

250   As outlined in paragraph 245, DEFENDANT'S prosecutions were intended to serve an inappropriate purpose.

251   The PLAINTIFF was restrained by the DEFENDANTS and deprived of his Personal liberty or freedom of movement.

252   That Plaintiff's entire time in COURT by way of summons, and imprisonment was against the PLAINTIFF'S will.

253   The DEFENDANTS accomplished the imprisonment by actual physical force or an express or implied threat of force.

254   The Defendants' acts were intentional, and DEFENDANT eventually prevailed.

255   That as a result of these incident Defendants did not receive any discipline nor was there any internal investigation regarding the incident.

256   GROSSE POINTE CITY and GROSSE POINTE WOODS municipal courts have directly violated PLAINTIFF'S due process as enumerated in paragraphs 1-244.

257   GROSSE POINTE FARMS, GROSSE POINTE SHORES and GROSSE POINTE PARK have indirectly violated PLAINTIFF's due process as enumerated in paragraphs 1-244 due to their courts being indistinguishable themselves from their police departments and politicians.

258   Through it's policies and practices, OAKLAND COUNTY CLEMIS et al disseminates and allows dissemination of innumerable citizens LEIN information without any legitimate action, review or consequences for those whom violate the CJIS STATUTE (28 CFR § 20.35).

259   THE GROSSE POINTE MUNICIPAL COURTS are separate from the other branches of government within their municipalities in name only.  The public at large is in jeopardy of being victimized by the Grosse Pointe Municipal court systems, particularly if Defendant's are not from GROSSE POINTE, are unable to hire one of the other Judges or prosecutors as defense

counsel or are minorities.

260     PLAINTIFF has standing under ARTICLE III for injunctive relieve for the following reasons:

1.  DEFENDANTS have inflicted emotional distress on PLAINTIFF, whom has lost 30lbs
    and has suffered severe migraines since DEFENDANT'S actions began.  PLAINTIFF
    has spent significant sums of money and time defending himself against the frivolous
    and malicious actions filed by DEFENDANT'S which PLAINTIFF PREVAILED.

2.  PLAINTIFF was wrongly imprisoned on multiple occasions.  ETHRIDGE engaged in
    ex-parte communications with the Complaining Officer ALCORN, ALCORN had
    previously assaulted PLAINTIFF while acting in his personal capacity and on video.

3.  Despite repeatedly prevailing on past charges, PLAINTIFF was charged on 2/5/2020
    with four new felonies and two new misdemeanors.  On 2/13/2020 ETHRIDGE accused
    PLAINTIFF of surfing the internet to dig up information on his family to fabricate a
    need to subpoena a family member of ETHRIDGE, entirely based upon EX-PARTE
    communications with ALCORN. Since 5/12/2019 PLAINTIFF has suffered from a
    never ending stream of criminal complaints out of the GROSSE POINTE WOODS and
    GROSSE POINTE CITY COURT.

WHEREFORE, PLAINTIFF seek judgment against Defendants, jointly and severally,
in the amount of Ten Million Dollars ($10,000,000.00) Dollars, to which
PLAINTIFF is entitled which are reasonable, fair and just, plus costs, interest and attorney
fees, together with exemplary and/or punitive damages.

**PLAINTIFF also SEEKS INJUNCTIVE RELIEF as it relates to count I in the form of:**

Enter a Judgment declaring GROSSE POINTE CITY and GROSSE POINTE WOODS municipal courts are
permanently and irrevocably barred from operation.  ASSIGN DEFENDANT'S existing municipal court
operations to be absorbed into another district court such as 36th or 32nd.

Enter a Judgment declaring that GROSSE POINTE FARMS, GROSSE POINTE SHORES and  GROSSE
POINTE PARK municipal courts are permanently and irrevocably barred from operation.  ASSIGN
DEFENDANT'S existing municipal court operations to be absorbed into another district court.

Enter a Judgment declaring that all Criminal Justice Information Systems, such as CLEMIS, must report misuse of their systems to State or Federal Law Enforcement Agencies as is plainly required, but universally not practiced, across the country with Criminal Justice Information Systems.

## COUNT II: DEFENDANTS ARE VIOLATING PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHT TO PERSONAL SECURITY.

261     Plaintiffs hereby re-alleges and incorporates by reference, Paragraphs 1 through 260 of Plaintiffs' Complaint, paragraph by paragraph and word for word, as if fully set forth herein.

262     DEFENDANTS refuse to legitimately investigate, request charges, review and/or approve charges when PLAINTIFF is a complaining witness.

263     Instead of approving charges against and suspects, PLAINTIFF'S Complaints are rolled into criminal complaints AGAINST plaintiff, and submitted to the courts as nonsensical evidence that PLAINTIFF is harassing other DEFENDANT'S, instead of acknowledging any potential merit to PLAINTIFF'S complaints.

265     Almost unbelievably, PLAINTIFF has been barred by ETHRIDGE, under the threat of Jail for violating bond, from calling emergency services as it relates to minor child. According to bond conditions, even if PLAINTIFF witnesses the violent assault or abduction of minor child, plaintiff is not permitted to call emergency services UNLESS PLAINTIFF currently has "custody", an arbitrary and murky distinction.

266     The vast resources of the "STATE" have been weaponized against PLAINTIFF, an action required to follow one order is met with being labeled a violation of another order, effectively guaranteeing plaintiff his eventual arrest and imprisonment.

267     Despite being US Citizen, paying taxes and abiding by all laws, PLAINTIFF has been denied Police and Judicial protections, including due process, permanently in the Municipalities of the GROSSE POINTES and by Wayne County, et al. Plaintiff maintains standing for ARTICLE III as enumerated in Paragraph 260.

WHEREFORE, PLAINTIFF seek judgment against Defendants, jointly and severally, in the amount of Ten Million Dollars ($10,000,000.00) Dollars, to which PLAINTIFF is entitled which are reasonable, fair and just, plus costs, interest and attorney fees, together with exemplary and/or punitive damages.

PLAINTIFF also SEEKS INJUNCTIVE RELIEF in the form of:

Enter a Judgment declaring GROSSE POINTE CITY and GROSSE POINTE WOODS municipal courts are permanently and irrevocably barred from operation. ASSIGN DEFENDANT'S existing municipal court operations to be absorbed into another district court.

Enter a Judgment declaring that GROSSE POINTE FARMS, GROSSE POINTE SHORES and GROSSE POINTE PARK municipal courts are permanently and irrevocably barred from operation. ASSIGN DEFENDANT'S existing municipal court operations to be absorbed into another district court.

## COUNT III: HAMTRAMCK et al ARE VIOLATING PLAINTIFFS' SUBSTANTIVE RIGHT TO REMAIN FREE FROM CRUEL AND UNUSUAL PUNISHMENT, 8th AMENDMENT.

268     Plaintiffs hereby re-alleges and incorporates by reference, Paragraphs 1 through 267 of Plaintiffs' Complaint, paragraph by paragraph and word for word, as if fully set forth herein.

269     DEFENDANTS acts were in violation of PLAINTIFF'S EIGHTH amendment rights against cruel and unusual punishment.

270     Even after PLAINTIFF was released from HAMTRAMCK'S jail (after 38 hours), HAMTRACK et al, upon information and belief, continues to systematically starve inmates. This despite having been put on notice by PLAINTIFF that HAMTRAMCK'S conduct is illegal and immoral and that a federal complaint would result.

271     HAMTRACK et al indignantly claims no records exist as to the actual food that is ordered, acquired or paid for in order to feed HAMTRACK inmates.

272     PLAINTIFF has ARTICLE III standing based upon

1.  Plaintiff was fed 300 calories per day for 2 days straight and was emotionally traumatized, as well as physically injured, when Plaintiff's low blood sugar caused an episode where Plaintiff lost consciousness.

2.  300 Calories per day would cause a loss of consciousness for most persons and is egregiously outside of known guidelines for humans necessary caloric intake.

3.  HAMTRACMK et al houses several inmates per day, 365 days per year. A wide sweeping change is

necessary to stop the continued injury of residents whom pass    through the Hamtramck Jail.

WHEREFORE, PLAINTIFF seek judgment against Defendants, jointly and severally, in the amount of Ten Million Dollars ($10,000,000.00) Dollars, to which PLAINTIFF is entitled which are reasonable, fair and just, plus costs, interest and attorney fees, together with exemplary and/or punitive damages.

**PLAINTIFF also SEEKS INJUNCTIVE RELIEF as it relates to COUNT III in the form of:**

Enter a Judgment declaring HAMTRAMCK must provide purchase orders, invoices and receipts for all items purchased or monies spent on the acquisition and preparation of food for jail inmates.

Enter a Judgment declaring that HAMTRAMCK et al must feed all inmates a minimum of 2600 calories per day, according to MDOC guidelines.

## COUNT IV, DEFENDANT'S GROSS NEGLIGENCE

273.    Plaintiff hereby re alleges and incorporates by reference, Paragraphs 1 through 272 of Plaintiff's Complaint, paragraph by paragraph and word for word, as if fully set forth herein.

274     That Defendants actions were grossly negligent

275     At all times relevant herein, Defendants GROSSE POINTE CITY Et AL, GROSSE POINTE FARMS ET AL, THEROS, BURGESS, DICKINSON WRIGHT, FILDEW HINKS, BERSCHBACK,  GROSSE POINTE WOODS et al, GROSSE POINTE FARMS et al, ALCORN, GROSSE POINTE CITY Employee's and Officers had the following ministerial duties, notwithstanding their standard duty of care:

a) To use due care and ascertain to a probable degree of certainty whether or not Plaintiff had committed a criminal offense prior to issuing a summons or arrest warrant;

b) To avoid the use of excessive and/or undue force in the arrest of Plaintiff;

c) To avoid the use of abusive verbal assaults and/or insults toward Plaintiff;

d) To obey all statutes, rules, regulations and applicable laws; and

e) To preserve the peace and protect the lawful rights of citizens.

f) to investigate allegations and complaints made by Plaintiff.

g) to operate a district or municipal court which follows state law and treats all citizens

equally.

h) to approve charges against suspects in a consistent manner, irrespective of suspects connections to police or political figures and refer misconduct to appropriate state or federal authorities.

i)to use due care in recording a court action.

j) to prevent defamatory, injurious and false statements from being made in public forum.

276   Defendants breached the aforementioned duties and were grossly negligent, as defined by statute, to-wit: MCL 691.1407, when they conducted themselves in a manner so reckless as to demonstrate a substantial lack of concern for whether an injury would result.

277   Defendants knew if they  submitted false evidence to police agencies, prosecutors and to the courts, it would result in undue harm to the PLAINTIFF.

277   As a direct and proximate result of the Defendants aforementioned wrongful conduct, Plaintiff experienced a loss of enjoyment of life, humiliation, and degradation.

278   Defendants ALCORN, Lisa Thiel, Dan Jensen Jr, and CHIEF JENSEN Sr. Knew their actions would cause harm and intended to cause harm to plaintiff by submitting false testimony to the courts, perjuring themselves, manufacturing evidence filing false police reports and actions with multiple police agencies and multiple courts.

279   ALL DEFENDANTS colluded in a fashion to ensure legal actions would be brought through (demonstrably) false testimoney, and/or legal action would survive due to their false testimony, despite knowing their testimony or the evidence in their possession was false,  and not having reported this false evidence to anyone, rather engage with PLAINTIFF, local police and local courts, operating publicly under the purported presumption that the evidence was legitimate.

280   ALL DEFENDANTS refused to perform their elected, appointed, or hired functions as local government or government representatives and citizens and colluded individually, directly or implied, with CHIEF JENSEN, LISA THIEL and/or others, to conspire against PLAINTIFF'S rights.

WHEREFORE, Plaintiff seek judgment against Defendants, jointly and severally, in whatever amount in excess of Ten Million ($10,000,000.00) Dollars, to which Plaintiff is entitled which are reasonable, fair and just, plus costs, interest and attorney fees, together with exemplary and/or punitive damages.

2/17/2020


STEPHEN THIEL

By:

STEPHEN THIEL, in pro per.
22222 Oxford St
DEARBON, MI  48124
(313) 264-3025R
StephenLThiel@gmail.com

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Stephen Thiel

**DEFENDANTS**
Grosse Pointe Farms, et al

**(b)** County of Residence of First Listed Plaintiff   Wayne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Wayne
*(IN U.S. PLAINTIFF CASES ONLY)*

17130 St. Paul, Grosse Pointe, MI

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se.

Case: 2:20-cv-10411
Judge: Cox, Sean F.
MJ: Whalen, R. Steven
Filed: 02-18-2020 At 01:21 PM
CMP THIEL V. GROSSE POINTE FARMS. CITY OF ET AL (NA)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 367 Health Care/ | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| | | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [X] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 550 Civil Rights | | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE                         DOCKET NUMBER

DATE  2-18-2020

SIGNATURE OF ATTORNEY OF RECORD   *Stephen Thiel*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?    ☐ Yes

        ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other    ☐ Yes
court, including state court? (Companion cases are matters in which    ☒ No
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :